**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON**

CIVIL ACTION NO. 24-126-DLB-CJS

JAY WILSON                                                                    PLAINTIFF

v.                          **MEMORANDUM OPINION AND ORDER**


XPO, INC., ENERSYS DELAWARE, INC.,                              DEFENDANTS/
ENERSYS INC.                                            THIRD-PARTY PLAINTIFFS

v.

IHERB, LLC AND SPENSER ASHCRAFT            THIRD-PARTY DEFENDANTS

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

This matter is before the Court on Defendant/Third-Party Plaintiff XPO, Inc.'s ("XPO") Motion for Summary Judgment (Doc. # 55). Plaintiff Jay Wilson and Defendant/Third-Party Plaintiff Enersys Delaware, Inc. (f/k/a Enersys, Inc.) ("Enersys") filed Responses in Opposition to XPO's Motion. (Docs. # 56 and 57). XPO filed its Reply (Doc. # 61), and the Motion (Doc. # 55) is ripe for the Court's review.

While XPO's Motion (Doc. # 55) was pending, Third-Party Defendants iHerb, LLC ("iHerb") and Spenser Ashcraft filed a Motion for Summary Judgment (Doc. # 77). Defendants/Third-Party Plaintiffs XPO and Enersys filed Responses in Opposition (Docs. # 78 and 79), Plaintiff Wilson filed a Reply (Doc. # 81), iHerb and Ashcraft filed Replies (Docs. # 82 and 83), and the matter is ripe for the Court's review.

For the following reasons, both motions are **denied**.

1

## I.   FACTUAL AND PROCEDURAL BACKGROUND

This case stems from an injury that occurred at Third-Party Defendant iHerb, LLC's facility in Hebron, Kentucky.  (Doc. # 1-1 at 34).  On June 28, 2023, Plaintiff Jay Wilson, an iHerb employee, was working to unload a 1,850-pound forklift battery that had recently arrived at iHerb's facility.  (*Id.* at 35).  iHerb had purchased this battery from Crown Equipment Corporation.  (Doc. # 59-2 ¶ 3).  However, Crown did not prepare the battery for shipping.  (*Id.* ¶ 4).  Instead, Enersys placed the battery on a forklift pallet and prepared it for shipping at Enersys' facility in Texas.  (*Id.*).  The battery was ultimately loaded into a trailer and XPO transported the battery from Enersys's facility in Texas to iHerb's facility in Kentucky.  (Doc. # 59-3 at 1).

Wilson, working with his colleague Spenser Ashcraft, examined the battery, which was sitting in the trailer, attached to an unloading dock at iHerb's facility.  (Doc. # 1-1 at 35).  The two men attempted to use a forklift to remove the battery from the trailer.  (*Id.*).  Wilson stood inside the trailer and observed as Ashcraft operated the forklift.  (*Id.*).  As Ashcraft attempted to back the battery out of the trailer, it became unstable.  (*Id.*).  Wilson stepped in the direction of the battery to investigate when, suddenly, the 1,850-pound battery began to fall towards him.  (*Id.*).  The battery fell on Wilson's right foot, pinning him to the floor.  (*Id.*).  While he was stuck, acid began leaking from the battery onto Wilson, burning his skin.  (*Id.*).

Wilson pursued a worker's compensation claim against his employer, iHerb, under the Kentucky Workers' Compensation Act ("KWCA").  (*See generally* Doc. # 55-4).  Ultimately, iHerb and Wilson settled this claim.  (*Id.* at 106-10).  Subsequently, on April 29, 2024, Wilson filed a Complaint against XPO and Enersys in Boone County Circuit

Court.  (Doc. # 1 at 1).  In his Complaint, Wilson alleged negligence against each of these companies.  (Doc. # 1-1 at 4-5).  On June 6, 2024, Wilson filed an Amended Complaint, adding a negligence claim against Crown.  (Doc. # 1 at 1).  Enersys removed the case to this Court on August 5, 2024.  (*Id.*).  Enersys, XPO, and Crown filed third-party complaints against iHerb and Ashcraft, seeking indemnity, apportionment, and contribution.  (*See* Docs. # 25, 26, and 27).  On October 7, 2025, Defendant XPO filed a Motion for Summary Judgment (Doc. # 55) on Wilson's negligence claim against it.  Wilson filed a Response in Opposition, as did Enersys.  (Docs. # 56 and 59).  XPO filed its Reply on November 11, 2025.  (Doc. # 61).[1]

On December 30, 2025, during the pendency of XPO's Motion (Doc. # 55), Third-Party Defendants iHerb and Ashcraft filed a Motion for Summary Judgment (Doc. # 77) on the third-party claims asserted against them by XPO, Enersys, and Crown.  XPO filed a Response in Opposition to the Third-Party Defendants' Motion (Doc. # 77) on January 20, 2026.  (Doc. # 78).  Enersys also filed a Response in Opposition on the same day.  (Doc. # 79).  The Third-Party Defendants filed a Reply to each of these Responses (Docs. # 78 and 79) on February 3, 2026.  (Docs. # 82 and 83).  Wilson also filed a Reply in support of the Third-Party Defendants' Motion on February 3, 2026.  (Doc. # 81).

Accordingly, two motions for summary judgment are currently ripe for the Court's review—XPO's Motion (Doc. # 55) seeking dismissal of Wilson's negligence claim against

---

[1]    While XPO's Motion (Doc. # 55) was pending, Defendant Crown also filed a Motion for Summary Judgment on Wilson's negligence claim against it. (Doc. # 74).  Wilson failed to respond to Crown's Motion for Summary Judgment, and the Court ordered Wilson to show cause why his claim should not be dismissed.  (Doc. # 80).  Wilson responded to the Court's Order, stating that he believed "there is insufficient evidence for a jury to conclude" that Crown was liable for Wilson's injuries.  (Doc. # 84 at 2).  The Court dismissed Crown as a defendant in this matter on February 5, 2026.  (Doc. # 85).  On February 10, 2026, the Court dismissed all claims between Crown and Third-Party Defendants iHerb and Ashcraft, discharging Crown from the case.  (Doc. # 88).

it and Third-Party Defendants' Motion (Doc. # 77) seeking summary judgment on the third-party claims for indemnification.

## II.   STANDARD OF REVIEW

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "Of course, [the moving party] bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  *Id*. at 323.

A fact is "material" for purposes of a motion for summary judgment where proof of that fact "would have [the] effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties."  *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir.1984).  A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  Conversely, where a reasonable jury could not find for the nonmoving party, there is no genuine issue of material fact for trial. *Feliciano v. City of Cleveland*, 988 F.2d 649, 654 (6th Cir.1993).  In making this evaluation, the court must examine the evidence and draw all reasonable inferences in favor of the non-moving party.

## III.   ANALYSIS

The Court will first turn to XPO's Motion for Summary Judgment (Doc. # 55) before taking up the Third-Party Plaintiffs' Motion (Doc. # 77).

**A.     XPO's Motion for Summary Judgment (Doc. # 55)**

XPO's Motion for Summary Judgment hinges on the premise that it is entitled "to up-the-ladder immunity under the Kentucky Workers' Compensation Act."  (Doc. # 55-1 at 3).  And this immunity, XPO contends, shields it from liability on Wilson's negligence claim.  (*Id.* at 5).

"The Kentucky Workers' Compensation Act is a legislative remedy which affords an injured worker a remedy without proof of the common law elements of fault."  *Gen. Elec. Co. v. Cain*, 236 S.W.3d 579, 606 (Ky. 2007).  Where the KWCA applies, it provides an injured worker with an exclusive remedy.  KRS 342.690(1).  Under the KWCA, employers who "secure payment of compensation" are immune from liability flowing from a workplace injury.  *Tarter v. AP/AIM Rivercenter Suites, LLC*, No. 2:16-cv-78-DLB, 2019 WL 114468, at *4 (E.D. Ky. Jan. 4, 2019); *see also Sheets v. Ford Motor Co.*, 626 S.W.3d 594, 597 (Ky. 2021) ("Under Kentucky law, an injured worker's recovery from his employer is limited to workers' compensation benefits unless he has expressly opted out of the workers' compensation system.").  The KWCA offers an expansive definition of "employer."  *Sheets*, 626 S.W.3d at 597.  Indeed, "the term 'employer' is construed broadly to include not only the worker's direct employer, but also a 'contractor' utilizing the employee's direct employer as a subcontractor."  *Id.* (citing *Beaver v. Oakley*, 279 S.W.3d 527, 530 (Ky. 2009) (footnote omitted)).  If an entity qualifies as a "contractor" under KRS 342.610(2), they are immune from tort liability where an injured worker is able to secure workers' compensation benefits from his immediate employer—the subcontractor.  *Black v. Dixie Consumer Prods. LLC*, 835 F.3d 579, 584 (6th Cir. 2016).  Thus, where a subcontractor provides workers' compensation benefits, its immunity as

5

an "employer" under the KWCA flows "up the ladder" to the contractor who hired the subcontractor. *Id.* at 585.

The Sixth Circuit has observed that a three-part inquiry determines which entities qualify for up-the-ladder immunity under the KWCA. *Id.* First, the Court asks whether the entity claiming immunity hired the injured worker's direct employer to perform the work which precipitated the injury. *Id.* (citing *Gen. Elec. Co. v. Cain*, 236 S.W.3d 579, 587 (Ky. 2007). Second, the subcontractor's work must be "a customary, usual or normal part" of the contractor's business or work that the contractor "repeats with some degree of regularity." *Id.* Finally, the subcontractor's work must be work that the contractor "would normally perform or be expected to perform with [its own] employees." *Id.*

Here, XPO argues that "[t]his statutory framework provides that a contractor—like XPO—who secures workers' compensation coverage is immune from tort liability for injuries sustained by employees of fellow contracting parties." (Doc. # 55-1 at 3-4 (citing *Fireman's Fund Ins. Co. v. Sherman & Fletcher*, 705 S.W.2d 459, 461-62 (Ky. 1986); *Miller v. Kentucky Power Co.*, 683 S.W.3d 669, 673-77 (Ky. Ct. App. 2023)). And XPO argues that because "iHerb hired XPO to deliver the freight that Wilson was unloading when he was injured," XPO qualifies as a "contractor" entitled to immunity under the KWCA. (Doc. # 55-1 at 5).

As Wilson points out in his Response, "XPO fundamentally misunderstands the up-the-ladder relationship." (Doc. # 56 at 6). XPO claims that iHerb hired it to deliver the battery from Enersys's facility in Texas to iHerb's distribution center in northern Kentucky. (Doc. # 55-1 at 5). Both Wilson and Enersys dispute this assertion. (Doc. # 56 ("[XPO] claims (incorrectly) that iHerb hired it."); Doc. # 59 ("In any event, XPO was not hired by

6

iHerb.")).  As evidence, XPO points to the Bill of Lading, which identifies iHerb as a consignee "subject to the terms and conditions of the agreement with XPO."  (Doc. # 61 at 3).  But factual disputes persist regarding iHerb's acceptance, or even knowledge, of this document.  (*See* Doc. # 83 at 6 ("There is no evidence that iHerb knew about any of the provisions in the bill of lading and therefore could not have agreed to accept them.")).  Indeed, Enersys offers undisputed evidence that "XPO was hired by EnerSys at the direction of Crown."  (Doc. # 59 at 4).  This contractual arrangement is reflected by the Affidavit of Steve Satek, Senior OEM Manager at Enersys.  (Doc. # 59-2 ¶ 5 ("Crown directed EnerSys to hire XPO, Inc. ("XPO") as the carrier for delivery of the battery, and EnerSys complied with that directive and hired XPO.")).  And even if iHerb was bound in some way by the terms of the Bill of Lading, it does not necessarily follow that iHerb— rather than Crown or Enersys—actually *hired* XPO to perform any work.

Nevertheless, even if the Court were to accept XPO's framing, up-the-ladder immunity remains unavailable to XPO.  In the factual scenario depicted by XPO, it is *iHerb*, rather than XPO, who is the "contractor" that sits "up the ladder."  If iHerb hired XPO to ship the battery from Texas to Kentucky, then XPO would, by necessity, occupy the position of subcontractor.  Accordingly, any up-the-ladder immunity might protect *iHerb* if an *XPO* employee was injured on the job.  XPO offers no support whatsoever for the proposition that up-the-ladder immunity also flows downward to subcontractors.  On the contrary, all the cases cited in XPO's Motion (Doc. # 55-1) involve situations where a subcontractor's employee is injured and seeks redress from a contractor.  *See Black*, 835 F.3d (truck driver employed by subcontractor brought a tort claim against the contractor who hired the subcontractor); *Fireman's Fund*, 705 S.W.2d at 460 (estate of construction

7

worker employed by subcontractor sought recovery from the contractor who hired the subcontractor); *Miller*, 683 S.W.3d at 670-71 (estate of tree maintenance employee who was employed by a subcontractor sought recovery from the contractor who hired the subcontractor).

Because even under XPO's own, disputed depiction of the facts, XPO is a subcontractor, it cannot avail itself of up-the-ladder immunity. As a result, XPO's Motion for Summary Judgment (Doc. # 55) is **denied**.

**B.    iHerb and Ashcraft's Motion for Summary Judgment (Doc. # 77)**

The Court now turns to Third-Party Defendants iHerb and Ashcraft's Motion for Summary Judgment.   (Doc. # 77).   Like XPO's Motion (Doc. # 55), Third-Party Defendants' Motion centers on the KWCA's exclusive remedy provision. (Doc. # 77-1 at 2 ("The basis of this Motion is simple.  The claims of Third-Party Plaintiffs fail as a matter of law and this case must be dismissed because [KRS 342.690(1)] provides the exclusive remedy as to claims against iHerb and Ashcraft[.]")).

As discussed above, "[i]f an employer secures payment of compensation as required by [the KWCA], the liability of such employer under [the KWCA] shall be exclusive in place of all other liability of such employer to the employee." KRS 342.690(1). So, unless an injured employee and his employer have contracted otherwise, the KWCA limits the employer's liability for workplace injuries.  Third-Party Defendants argue that this immunity extends to protect them "from tort liability and tort lawsuits generally." (Doc. # 77-1 at 2).   Specifically, Third-Party Defendants claim that the KWCA's exclusive remedy provision prohibits the third-party claims brought by XPO and Enersys.[2]  (*Id.*).

---

[2]    Although the Third-Party Defendants also argue in their Motion that the third-party claims raised by Crown are similarly prohibited, the Court has since dismissed Crown from the case.

Because XPO and Enersys' claims against Third-Party Defendants "necessarily derive from the tort claims of Jay Wilson against [XPO and Enersys]," Third-Party Defendants argue that they enjoy immunity from these claims.  (*Id.*).

"A claim for indemnity is 'one in which the claimant seeks restitution for damages it was required to pay for injuries sustained by another and which were entirely or primarily caused by the party against whom indemnity is sought.'"  *Franke v. Ford Motor Co.*, 398 F. Supp. 2d 833, 840 (W.D. Ky. 2005) (citing *Degener v. Hall Contracting Corp.*, 27 S.W.3d 775, (Ky. 2000)).  "Kentucky law permits a third party to seek common law indemnity against an employer whose injured employee brings claims against the third party."  *Purvis v. Praxair, Inc.*, No. 5:19-cv-08-KKC, 2020 WL 6375551, at *2 (E.D. Ky. Oct. 30, 2020) (citations omitted).

The Kentucky Supreme Court has concluded that recovery for a third-party indemnity claim against an injured worker's employer is limited to the amount of KWCA benefits that have already been paid.  *Labor Ready v. Johnston*, 289 S.W.3d 200, 208 (Ky. 2009).  In *Labor Ready*, a worker was injured when a temporary employee struck her with an automobile.  *Id.* at 202.  The injured worker received KWCA compensation from her employer and filed a separate tort action against the entity that employed the temporary worker.  *Id.*  This entity, in turn, claimed a right to indemnity from the injured worker's employer.  *Id.*  Although the Kentucky Supreme Court acknowledged the availability of such an action, it held that an employer's liability is limited to the amount that the injured worker has already received under the KWCA.  *Id.* at 208.

---

(Doc. # 83).  Accordingly, the Court will consider only the third-party claims raised by Enersys and XPO.

Enersys contends that, despite its exclusive remedy provision, the KWCA does not preclude its claims for indemnity and apportionment against the Third-Party Defendants. (Doc. # 79 at 2). As support, Enersys cites *Smith v. Leveelift, Inc.*, No. 3:04-cv-02-JMH, 2005 WL 2219291 (E.D. Ky. Sep. 13, 2005) and *Smith v. N. Am. Stainless LP*, No. 3:03-cv-33-JMH, 2007 WL 625954 (E.D. Ky. Feb. 23, 2007). (*Id.* at 2-3). These cases acknowledge that indemnity actions are limited to the amount an employer has already paid an injured worker under the KWCA. However, they also note that "an examination of KRS § 342.690 reveals that the legislature did not seek to abolish indemnity actions" but merely sought to limit the amount of recovery available to third parties. *Leveelift*, 2005 WL 2219291, at *3 (quoting *Union Carbide Corp. v. Sweco, Inc.*, 610 S.W.2d 932 (Ky. Ct. App. 1981)). Kentucky courts have long recognized that "'the common-law right to indemnity is a jural right which existed prior to the adoption of our Constitution and may not be abolished by the General Assembly.'" *Union Carbide*, 610 S.W.2d at 934 (quoting *Kentucky Util. Co. v. Jackson Cnty. Rural Elec. Cooperative Corp.*, 438 S.W.2d 788, 790 (Ky. 1969)). Consequently, although KRS 342.690 placed limits on the amount of recovery available in third-party indemnity actions, the statute could not have abolished the right to indemnity. *Id.*

Indeed, the Kentucky Supreme Court, in *Labor Ready*, contemplated that such indemnity actions—although subject to the aforementioned limitation—are still viable. 289 S.W.3d at 208. And the Sixth Circuit has reaffirmed that "Kentucky courts have clearly held that [KRS] 342.690 does not prohibit a third-party plaintiff from seeking indemnification *from a third-party defendant that has already paid workers' compensation to the plaintiff in a matter*." *Konecranes, Inc. v. Cen. Motor Wheel of Am., Inc.*, 642 F.

App'x 554, 557-58 (6th Cir. 2016) (citing *Labor Ready*, 289 S.W.3d at 207-08; *Union Carbide*, 610 S.W.2d at 934) (emphasis added); *see also Lindsey v. Perdue Farms, Inc.*, No. 4:09-cv-71-JHM, 2013 WL 943839, at *3 (W.D. Ky. Mar. 11, 2013) (holding that the KWCA's limitation on indemnification "does not mandate dismissal of [an] indemnity claim").

iHerb and Ashcraft argue that the KWCA's exclusive remedy provision forecloses the indemnity claims brought by XPO and Enersys. (Doc. # 77-1 at 10). However, the Kentucky Supreme Court, courts in the Eastern and Western Districts of Kentucky, and the Sixth Circuit have recognized that the KWCA's exclusive remedy provision, while limiting the available recovery, does not foreclose such claims. *See, e.g.*, *Labor Ready*, 289 S.W.3d at 208; *Konecranes*, 642 F. App'x at 557-58. Accordingly, the Court **denies** iHerb and Ashcraft's Motion for Summary Judgment (Doc. # 77).[3]

## IV.  CONCLUSION

For the reasons set forth herein, **IT IS SO ORDERED** that:

(1)  Defendant XPO's Motion for Summary Judgment (Doc. # 55) is **denied**;

(2)  Third-Party Defendants iHerb and Ashcraft's Motion for Summary Judgment (Doc. # 77) is **denied**;

---

[3]  Third-Party Defendants' Motion for Summary Judgment (Doc. # 77) sought dismissal of all third-party indemnity claims against them solely on the basis that "[t]he KWCA provides exclusive remedy immunity to iHerb and Ashcraft[.]" (Doc. # 77-1 at 10). Having found that the KWCA does not bar third-party indemnification claims, the Court declines to address Third-Party Defendants' arguments regarding the possibility of contractual indemnity stemming from the Bill of Lading. (*See* Doc. # 83 at 5-6). These arguments came in reply to XPO's Response (Doc. # 78 at 7-8) and did not appear in the Third-Party Defendants' initial Motion for Summary Judgment (Doc. # 77).

(3)    **Not later than April 6, 2026**, the parties shall file a Joint Status Report providing available dates for trial, and whether they would be amenable to a Court-facilitated mediation.

This 16th day of March, 2026.



Signed By:

_David L. Bunning_

**Chief United States District Judge**